# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FLOORS & MORE, LLC, and
VINCENT VIRGA,
*Plaintiffs*

v.

SCOTT APPEL, NABEEL HAMAD,
JOSEPH HAMAD, AND TOUCH OF
COLOR DESIGN GROUP, INC. AND
TOUCH OF COLOR FLOORING, INC.
*Defendants*

**COMPLAINT**

## PARTIES

1.      Plaintiff Vincent Virga is an individual residing at 411 North Street, Jefferson, Worcester County, Massachusetts.

2.      Plaintiff Floors & More, LLC ("Floors & More") is a Massachusetts limited liability company with a principal place of business located at 470 Southbridge Street, Auburn, Massachusetts.

3.      Floors & More brings this action on its own behalf. This suit is authorized under the Massachusetts Limited Liability Company Act (G.L. c. 156C, § 55), and Vincent Virga, as Manager of Floors & More, has authority to cause Floors & More to initiate this suit under the Floors & More Operating Agreement.   See G.L. c. 156C, § 56.

4.      Defendant Scott Appel is an individual residing at 6433 Moline Lane, Harrisburg, PA 17111.

5.      Nabeel Hamad is an individual residing at 6481 Hunters Run Road, Harrisburg, PA 17111.

1

6.     Joseph Hamad is an individual residing at 1812 Fox Hunt Lane, Harrisburg, PA 17110.

7.     Touch of Color Design Group, Inc. ("Touch of Color Design Group") is a Pennsylvania corporation with a usual place of business at 6303 Allentown Blvd., Harrisburg, PA 17112.

8.     Touch of Color Flooring, Inc. ("Touch of Color Flooring") is a Pennsylvania corporation with a usual place of business at 6303 Allentown Blvd., Harrisburg, PA 17112. (Touch of Color Flooring and Touch of Color Design Group, collectively referred to as "Touch of Color").

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), as the dispute is between citizens of different states, and the amount in controversy exceeds $75,000.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), and specifically in the Central Division pursuant to Local Rule 40.1(D)(1)(c).

## FACTUAL ALLEGATIONS

11.     At all relevant times, Virga was in the business of selling retail and wholesale flooring products and had previously run two of the three largest floor covering buying groups in North America.

12.     Appel, Nabeel Hamad ("Nabeel") and Joseph Hamad ("Joseph") (collectively the "Appel Group") are also in the business of selling retail, builder, property management, commercial and wholesale flooring products and operate at least three business entities, Touch of

Colorand SJN Big Bob's, LLC, ("SJN"),a Pennsylvania franchisee of the Big Bob's Flooring Outlet of America, Inc. ("Big Bob's")franchise.

13.     In the flooring industry, in order to maximize and leverage purchasing power, a business strategy employed by the purchasers of flooring products, advertising, and store services, at the retail, builder, property management and wholesale level, is to form a buying group.

14.     Flooring buying groups, in many instances, negotiate agreements with manufacturers whereby, when a certain level of purchases are achieved, the manufacturer rebates an agreed upon percentage of the amount purchased by the buying group, which group keeps a portion of the rebate to fund operations and returns a portion to its members.

15.     In 2015, both Virga and the Appel Groups owned businesses that were involved with various flooring buying groups.

16.     Virga decided in 2011 that using his prior experience in running floor covering buying groups, he would create his own flooring buying group to better meet the objectives of those involved in the flooring business and began developing a plan to do so.  In 2015 he began to execute on that plan.

17.     Knowing that the Appel Group accounted for over $44,000,000 of sales of flooring products and knowing further that the Appel Group did not have an ownership interest in any flooring buying groups, Virga approached Appel in 2015 to discuss the opportunity to participate in the new buying group he intended to create.

18.     In December 2015, Virga drafted a formal business plan for the formation of a new buying group ("Business Plan").

19.     A   large   portion   of   the   Appel   Group's   sales   was   in   the   so-called builder/multifamily   area   which   encompassed   flooring   products   sold   in   large   quantities   to builders or to property managers who maintain large multifamily properties.

20.     The Business Plan created by Virga intended to exercise an option to purchase 70% of an existing flooring outlet buying group known as Big Bob's, which he had negotiated the rights   for   in   2011,   and   to   also   create   a   retail   buying   group   based   around   his   Floors   & Kitchens   Today   business,   and   a   builder/multifamily   buying   group   based   around   the   Appel Group's collective businesses.

21.     As part of the plan, Appel was to create the builder/multifamily buying group and use   the   large   volume   of   the   Appel   Group's   purchases   to   negotiate   favorable   contracts   with manufacturers and suppliers.

22.     Appel and Virga discussed at length that Touch of Color operations would have to leave the existing buying group they were in, Floor Expo, since Virga believed that Floor Expo if Appel became an owner of a competing buying group.

23.     The Business Plan incorporated Appel's creation of the builder/multifamily group and   intentionally   understated   the   Appel   Group's   sales   at   $28,000,000   from   the   projected $44,000,000 Appel anticipated from his group's sales:

> "One   of   our   founding   partners   [Appel]   business   specializes   in   this   category   and   is
> amongst the top 20 national providers to builders and property managers . . . From day
> one we will have signed on a $28 Million dollar member in the form of our partners
> business [i.e., Touch of Color]."

24.     Appel was directly involved in reviewing several iterations of the Business Plan before giving final approval to the Business Plan in December  2015.

25.     At   the   same   time   a   Convertible   Promissory   Note   ("Convertible   Note")   was created providing capital to Floors & More from Appel and incorporating the Business Plan's

assurance that the Appel Group members would run all their flooring product purchases through Floors & More's buying groups.  See Exhibit 1, Section 6.1 in pertinent part:

> If this election is exercised, each of these individuals and any floor companies they have any ownership in, including Touch of Color, will be subject to and must comply with all applicable obligations, restriction and requirements of Class A Voting Membership Interests Members (including, but not limited to, belonging to the Floors & More, LLC and/or its subsidiary buying groups and running all purchases through its affiliation).

26.    The Business Plan Appel approved included a representation that Scott Appel would focus on three key areas including "Build out the programs and services for the multi-family builder program."

27.    The Business Plan was given to Hometown Bank with a request for financing for the newly created Floors & More.

28.    On or about December 31, 2015, Virga formed Floors & More, LLC, the entity which would become the buying group.

29.    In reliance on this Business Plan in January 2016, Hometown Bank extended financing to Floors & More.

30.    At all times Virga has been the sole member and sole manager of Floors & More. See Floors & More, LLC Limited Liability Company Operating Agreement attached hereto as **Exhibit 2**.

31.    In January 2016 Virga finalized his planned purchase of 70% of the Big Bob's franchise through Floors & More, giving Floors & More an immediate established outlet buying group with over $44,000,000 in gross annual sales.

32.    Floors & More purchased this 70% interest in Big Bob's for $750,000 using a portion of the $300,000 loan (memorialized by the Convertible Note) from Appel.

33.     Based upon Appel's commitment to develop the builder/multifamily buying group and the Appel Group's promise to run the Touch of Color and SJN purchases through the newly formed Floors & More's buying group, Appel, Nabeel and Joseph were given an option in the Convertible Note to convert $150,000 of the $300,000 loan from Appel into a collective 50% ownership interest in Floors & More upon satisfaction of certain conditions.  Ex. 1. Section 6.2

34.     Floors & More would not have given Appel, Nabeel or Joseph this option to obtain a 50% membership interest in a company that now accounted for over $80,000,000  in total flooring sales per year but for the promise that they would run their purchases of the flooring companies they controlled through Floors & More.

35.     The Convertible Note specifically contemplated that the Appel Group would run all its flooring purchases through the Floors & More buying groups as evidenced by paragraph 6.1 of that note (quoted in paragraph 25 above).

36.     Pursuant to Section 6.1 of the Convertible Note, the Appel Group had the option to convert $150,000 of the principal balance into a 50% membership interest in Floors & More upon certain terms and conditions.  Ex. 1, Section 6.1 states in pertinent part:

>  Conversion to LLC Membership Interests. Upon the closing of the pending purchase of a 70% interest in Big Bob's Flooring Outlet of America, Inc. by Floors & More, LLC, a company owned wholly by Vincent Virga, $150,000.00 of the amount due under the terms of this Note, including all unpaid principal and accrued interest and any applicable late charges as of the date of conversion, may be converted, at Lender's option, into Membership Interests totaling fifty percent (50%) of the Floors & More, LLC's Class A Voting Membership Interests, with twenty percent (20%) of that ownership going to Scott Appel of 6433 Moline Lane, Harrisburg, PA 17111, twenty percent (20%) of that ownership going to Nabeel Hamad of 6481 Hunters Run Road, Harrisburg, PA 17111, and ten percent ( 10%) of that ownership going to Joseph Hamad of 1812 Fox Hunt Lane, Harrisburg, PA 17110. If this election is exercised, each of these individuals and any floor companies they have any ownership in, including Touch of Color, will be subject to and must comply with all applicable obligations, restriction and

requirements of Class A Voting Membership Interests Members (including, but not limited to, belonging to the Floors & More, LLC and/or its subsidiary buying groups and running all purchases through this affiliation). Notwithstanding the above election to purchase, Vincent Virga will remain the sole managing partner of Floors & More, LLC.

37.   Section 6.2 of the Convertible Note required Appel to surrender the $300,000 Convertible Note in exchange for a certificate of membership interest in Floors & More and a new promissory note in the amount of $150,000.

38.   Section 9 of the Convertible Note states as follows:

"This Note does not by itself entitle the Lender [Appel] to any voting rights or other rights as a Member of the Company [Floors & More]. In the absence of affirmative action by the Lender to purchase equity securities of the Company by conversion of this Note, no provisions hereof, and no enumeration herein of the rights or privileges of the Lender, shall cause the Lender to be a Member of the Company."

39.   Neither Appel, Nabeel nor Joseph ever took the required affirmative action under Section 6 of the Convertible Note, nor did they ever convert any of their accounts encompassing $40,000,000 of annual sales of their Touch of Color flooring businesses to Floors & More, and nor have they run all of their SJN business through the Floors & More buying group.

40.   Floors & More initially repaid the Convertible Note based on the assumption that the Appel Group would honor its commitments, create the builder/multifamily buying group, run their sales through Floors & More and properly exercise the conversion option.

41.   In late April 2016, Appel made clear that he would not honor his commitment and would not run Touch of Colors' sales through the buying group, nor did he do anything to create the builder/multifamily buying group. Instead the Appel Group continued to do business through a competing buying group.

42.     Thereafter, Floors & More made all payments under the Convertible Note and repaid the entire $300,000 principal balance plus interest under the Convertible Note in December 2016.

43.     As a consequence of the repayment of the Convertible Note in full, there is no amount of debt that can be converted to equity as provided for in the note.

44.     Neither Appel, Nabeel nor Joseph ever properly exercised their option to obtain a membership interest in Floors & More.

45.     Despite failing to exercise the option to obtain a membership interest in Floors & More, Appel has repeatedly asserted that he is an owner of the business and a member of the limited liability company.

46.     Further, despite claiming an ownership interest in Floors & More, Appel has failed to abide by his responsibilities to Floors & More and has failed to comply with the Floors & More Operating Agreement and the obligations under the Convertible Note.

47.     The Floors & More Operating Agreement, Article 9.06, consistent with the requirements of the Convertible Note and the Business Plan, expressly requires that members must run all purchases of flooring materials through Floors & More's buying groups:

> "All Members agree as a part of their membership to have any flooring, cabinet or counter, or paint business in which they have an ownership interest, including trusts, corporations, LLC's, partnerships or any type of legal entity…will belong to one of the buying groups including the outlet division, the builder – multi family division, or the full service retail division ( for purposes of this section, the retail affiliation division does not satisfy this requirement, and will run all purchases through registered accounts with all approved vendors, and will insure a minimum of a 1% net rebate to the group, on the cost of materials for any such entity while they are a Member hereof."

48.     To this day, Touch of Color has not converted any of their accounts registered with a competing buying group, Floor Expo, to the Floors & More buying groups and the Appel Group has run some, but not all of their purchases for their SJN business through the company.

49.     If Touch of Colors' flooring purchases were run through the Floors & More buying group, Floors & More would realize approximately $600,000 of gross rebates (50% of which would be paid to Touch of Color) for these purchases alone each year from flooring suppliers.

**COUNT I**
**Declaratory Relief Pursuant to 28 U.S.C. § 2201 (Declaratory Judgment Act)**
**(Floors & More vs. Scott Appel, Nabeel Hamad and Joseph Hamad)**

50.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 49 as if expressly set forth herein.

51.     There is a real and actual controversy between the parties regarding whether Appel, Nabeel and Joseph acquired a membership interest in Floors & More, LLC. The controversy is ongoing and demands specific relief through a decree of a conclusive character.

52.     The Convertible Note given by Floors & More constituted an option by which Appel, Nabeel and Joseph could convert a portion of the principal balance owed to Appel into a total of a 50% membership interest in Floors & More for Appel, Nabeel and Joseph.

53.     Tender under the Convertible Note was a condition precedent to Appel, Nabeel and Joseph exercising their option to acquire a membership interest in Floors & More.

54.     Appel, Nabeel and Joseph failed to comply with the tender requirements set forth in Section 6 of the Convertible Note.

55.     Appel continued to accept Convertible Note payments from Floors & More based upon a $300,000 principal balance, as opposed to the $150,000 principal balance that would have existed upon proper tender under the Convertible Note.

56.     Floors & More subsequently satisfied the full $300,000 principal balance plus interest under the Convertible Note.  The repayment of the Convertible Note means that there is no consideration for the conversion of debt to equity.

57.     Appel, Nabeel and Joseph failed to properly exercise their option and no longer have an option to obtain a membership interest in Floors & More.  Their failure to run their flooring purchases through the Floors & Moore buying group as required by the Convertible Note, the Business Plan and the Operating Agreement evidence the fact that they never attempted to become members of Floors & More.

WHEREFORE, Plaintiff, Floors & More, LLC, requests declaratory judgment enter against Scott Appel, Nabeel Hamad and Joseph Hamad as follows:

1.     The Court issue a declaratory order that:

    a.  The Convertible Note dated January 15, 2016 was between Floors & More, LLC as borrower and defendant, Scott Appel, as lender;

    b.  Under the Convertible Note, Appel had the option to be repaid $300,000 plus interest, or upon satisfaction of the option requirements, to be repaid $150,000 and for Appel, Nabeel and Joseph to receive a collective 50% membership interest in Floors & More;

    c.  Appel, Nabeel and Joseph failed to comply with the tender requirements set forth in the Convertible Note;

d.  Neither Appel, Nabeel nor Joseph exercised the option under the Convertible Note and therefore conversion of debt to equity cannot occur; and

e.  Plaintiff Vincent Virga remains the sole member of Floors & More, LLC;

2.  That Floors & More, LLC be awarded its reasonable attorney's fees and costs of this action; and

3.  For such other relief as this Court deems proper.

**COUNT II**
**Fraud in the Inducement**
**( vs. Scott Appel, Nabeel Hamad and Joseph Hamad)**

58.  Plaintiffs incorporate by reference the allegations in paragraphs 1 through 57 as if expressly set forth herein.

59.  This Count is brought in the alternative to Count I, in the event the Court finds that the option under the Convertible Note was properly exercised.

60.  On multiple occasions in the months leading up to the completion of the Business Plan in December 2015 and during the negotiation of the Floors & More Operating Agreement and the Convertible Note signed by Appel on January 15, 2016, Appel falsely represented to Virga and the Floors & More entity Virga was creating that Appel would undertake to create a builder/multifamily buying group under Floors & More and  Appel falsely represented that he, Nabeel and Joseph would run their companies' flooring purchases through the Floors & More buying groups.

61.  Appel, Nabeel and Joseph knew these representations were false because they had no intention of creating a builder/multifamily buying group and no intention of running their companies' purchases through the Floors & More buying groups.  These false representations continued to be made into 2016.

62.     Virga and Floors & More relied on Appel's continuing false representations and were induced to act, and in fact did act, by submitting the Business Plan to Hometown Bank, obtaining and guaranteeing a loan from Hometown Bank, executing the Operating Agreement, executing the Convertible Note granting Appel, Nabeel and Joseph the option to become  owners of Floors & More, and making representations to Hometown Bank and prospective participants in and suppliers of Floors & More.

63.     Virga and Floors & More's reliance on Appel's continuing false representations was reasonable.

64.     Appel, Nabeel and Joseph have not run their sales through Floors & More as promised.

65.     Appel has not created a building/multi-family buying group as promised.

66.     Virga and Floors & More have suffered damages caused by reliance on the false representations.

WHEREFORE, Plaintiffs, Vincent Virga and Floors & More, LLC, request judgment enter against Scott Appel, Nabeel Hamad and Joseph Hamad as follows:

1.     That the conversion option of the Convertible Note is voidable and that Virga and Floors & More elect to void the option of Scott Appel, Nabeel Hamad and Joseph Hamad to convert;

2.     That Floors & More and Vincent Virga, be awarded their damages against Scott Appel, Nabeel Hamad and Joseph Hamad in an amount to be determined at trial plus interest;

3.     That Floors & More and Vincent Virga be awarded their reasonable attorney's fees against Scott Appel, Nabeel Hamad and Joseph Hamad and costs of this action; and,

4.     For such other relief as this Court deems proper.

## COUNT III
### Negligent Misrepresentation
### (vs. Scott Appel, Nabeel Hamad and Joseph Hamad)

67.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 66 as if expressly set forth herein.

68.     This Count is brought in the alternative to Count I, in the event the Court finds that the option in the Convertible Note was properly exercised.

69.     On multiple occasions in the months leading up to the completion of the Business Plan in December 2015 and during the negotiation of the Floors & More Operating Agreement and the Convertible Note signed by Appel on January 15, 2016,  Appel negligently represented to Virga and the Floors & More buying group he was creating that Appel would undertake to create a builder/multifamily buying group and he, Nabeel and Joseph negligently represented, and continued to represent that they would run their companies' flooring purchases through the Floors & More buying groups.

70.     These representations were material to the agreement between Appel, Floors & More and Virga.

71.     Virga and Floors & More relied on these continuing false representations and were induced to act, and in fact did act, by submitting the Business Plan to Hometown Bank, obtaining and guaranteeing a loan from Hometown Bank, executing the Operating Agreement, executing the Convertible Note granting Appel, Nabeel and Joseph the option to become  owners of Floors & More and making representations to Hometown Bank and prospective participants in and suppliers of Floors & More.

72.     Virga and Floors & More's reliance on these negligent misrepresentations were reasonable.

73.     Virga and Floors & More have suffered damages caused by reliance on these negligent misrepresentations.

WHEREFORE, Plaintiffs, Vincent Virga and Floors & More, request judgment enter against Scott Appel, Nabeel Hamad and Joseph Hamad as follows:

1.     That the conversion option in the Convertible Note is voidable and that Virga and Floors & More elect to void the option of Scott Appel, Nabeel Hamad and Joseph Hamad to convert;

2.     That Vincent Virga and Floors & More, be awarded their damages against Scott Appel in an amount to be determined at trial plus interest;

3.     That Vincent Virga and Floors & More be awarded their reasonable attorney's fees against Scott Appel, Nabeel Hamad and Joseph Hamad and costs of this action; and,

4.     For such other relief as this Court deems proper.

## COUNT IV
## Breach of Contract
## ( Scott Appel, Nabeel Hamad and Joseph Hamad)

74.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 73 as if expressly set forth herein.

75.     This Count is brought in the alternative to Count I, in the event the Court finds that Appel had the option to convert debt to equity and properly exercised that option to acquire a membership interest in Floors & More for himself, Nabeel and Joseph.

76.     The Operating Agreement is a binding and enforceable contract between members of the LLC.

77.   Section 9.06 of the Operating Agreement requires all members to run all their sales through one of the floors & More buying groups

78.   Appel, Nabeel and Joseph each breached their obligations set forth in Section 9.06 by failing to have their flooring businesses, including but not limited to Touch of Color, run all purchases through a Floors & More buying group.

79.   The breaches of Appel, Nabeel and Joseph, jointly and severally, caused Floors & More to be damaged.

80.   Such damages include but are not limited to the 1% minimum net rebate on the purchases of Touch of Color, Floors & More's loss of opportunity to attract new members based on the projected purchases of Appel Group companies in the buying group, and the ultimate refusal by certain manufacturers to renew contracts with Floors & More because of the failure of its purchases to meet projections based on the failure of the Appel Group to run purchases through Floors & More.

81.   Touch of Colors' annual revenue was at that time approximately $40,000,000 and SJN's annual revenue at the time was approximately $4,000,000.   The gross rebates to Floors & More anticipated from these purchases would be approximately $600,000.

82.   The damages arising from rebates lost by Floors & More far exceed $75,000.

83.   The manufacturers who cancelled contracts with Floors & More for 2017  had paid over $306,637.52 in rebates to Floors & More in 2016

WHEREFORE, Plaintiff, Floors & More, LLC, requests that this Court enter judgment against Scott Appel, Nabeel Hamad and Joseph Hamad, jointly and severally, and Touch of Color Design Group, Inc. and Touch of Color Flooring, Inc. and any other entity engaged in the flooring business and controlled by Appel, Nabeel or Joseph as follows:

1. That Floors & More be awarded its damages against these entities in an amount to be determined at trial plus interest;

2. That Floors & More be awarded its reasonable attorney's fees and costs of this action; and,

3. For such other relief as this Court deems proper.

**COUNT V**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(Scott Appel, Nabeel Hamad, Joseph Hamad and**
**Touch of Color Design Group, Inc. and Touch of Color Flooring, Inc.)**

84. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 83 as if expressly set forth herein.

85. This Count is brought in the alternative to Count I, in the event the Court finds that Appel, Nabeel and Joseph acquired membership interests in Floors & More.

86. As a member of Floors & More, Appel, Nabeel and Joseph are each a party to its Operating Agreement.

87. The Operating Agreement is a binding and enforceable contract between members.

88. Floors & More is entitled to receive "the fruits of its contract."

89. By failing to develop a builder/multifamily buying group and by failing to run his purchases through Floors & More buying groups, Appel denied Floors & More the "fruits of its contract" with the Appel Group.

90. By failing to run the sales of flooring businesses in which they had an ownership interest through Floors & More, Nabeel and Joseph, and the companies in which they had an ownership interest denied Floors & More the "fruits of its contract" with each of them and their companies.

16

91.     As a consequence of the conduct of Appel, Nabeel and Joseph, Floors & More has been damaged. Such damages include but are not limited to the 1% minimum net rebate on the purchases of Touch of Color, the loss of the opportunity of Floors & More to attract new members based on the projected purchases of the companies owned by Appel, Nabeel and Joseph, and the ultimate refusal by certain manufacturers to renew contracts with Floors & More because the projected purchases did not meet projections because of the failure of the Appel Group to run purchases through Floors & More buying groups.

WHEREFORE, Plaintiff, Floors & More, LLC, requests that this court enter judgment in its favor against Scott Appel, Nabeel Hamad and Joseph Hamad, jointly and severally, and Touch of Color Design Group, Inc., Touch of Color Flooring, Inc. and any other entity engaged in the flooring business and controlled by Scott Appel, Nabeel Hamad or Joseph Hamad.

1.     In the amount of its damages to be determined at trial plus interest; and,

2.     In the amount of its reasonable attorney's fees and costs of this action; and,

3.     For such other relief as this Court deems proper.

## COUNT VI
## Breach of Fiduciary Duty
### (Scott Appel, Nabeel Hamad and Joseph Hamad)

92.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 91 as if expressly set forth herein.

93.     This Count is brought in the alternative to Count I, in the event the Court finds that Appel, Nabeel and Joseph properly exercised the option under the Convertible Note and acquired a membership interest in Floors & More

94.     Floors & More is a closely held LLC.

95.     As a member of Floors & More, Appel, Nabeel and Joseph each owe a duty of utmost good faith and loyalty to Floors & More and to their fellow members including Virga.

96.     By his active participation in developing the Business Plan and securing financing in anticipation of the organization of Floors & More, Appel was a promoter of Floors & More, and as such owed a duty of utmost good faith and loyalty to Floors & More and to his fellow promoter Virga beginning in December 2015.

97.     Appel breached his fiduciary duties by, among other things, falsely representing his intention to run his companies' flooring purchases through Floors & More, by failing to develop the builder/multifamily buying group, by failing to run his business' flooring purchases through a Floors & More buying groups as required by the Convertible Note and the Operating Agreement, and by running his business flooring purchases through competing buying groups.

98.     Nabeel and Joseph each breached their fiduciary duties to Floors & More by, among other things, failing to run their business flooring purchases through Floors & More buying groups as required by the Convertible Note and the Operating Agreement, and by running their business flooring purchases through competing buying groups.

99.     Appel, Nabeel and Joseph acted in their own self-interest, rather than the interest of Floors & More in their dealings with a competing buying group.

100.    Appel, Nabeel and Joseph caused third parties to cease dealing with Floors and More to the detriment of Floors & More and its members.

101.    Appel, Nabeel and Joseph knew or should have known that their refusal to run their companies' sales through Floors & More would cause harm to Floors & More, damage its reputation, impair its ability to attract new participants and suppliers to the buying group, and interfere with its ability to conduct its business in the manner the parties agreed it would.

102.    Appel, Nabeel and Joseph benefitted personally from the breach of their fiduciary duties to Floors & More.

103.    The breaches of fiduciary duties by Appel, Nabeel and Joseph have caused Floors & More to suffer damages.

WHEREFORE, Plaintiffs, Floors & More, LLC, requests judgment enter in its favor against Scott Appel, Nabeel Hamad and Joseph Hamad as follows:

1.    That the conversion option in the Convertible Note be rescinded;

2.    That Floors & Mores be awarded its damages in an amount to be determined at trial plus interest;

3.    That Floors & More be awarded its reasonable attorney's fees and costs of this action; and,

4.    For such other relief as this Court deems proper.

## COUNT VI
## G.L. c. 93A, § 11
### ( Scott Appel, Nabeel Hamad and Joseph Hamad)

104.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 103 as if expressly set forth herein.

105.    At all material times hereto, Floors & More, Appel, Nabeel and Joseph were acting as "persons" engaged in "trade or commerce" within the meaning of G.L. c. 93A.

106.    Appel promised Floors & More he would set up the builder/multifamily buying group for Floors & More and Appel, Nabeel and Joseph  promised they would then run all their company's flooring purchases through Floors & More.

107.    In reliance on Appel, Nabeel and Joseph's promises Floors & More solicited new business and negotiated contracts with manufacturers.

108.    In reliance on Appel, Nabeel and Joseph's promises, Virga and Floors & More agreed to give Appel, Nabeel and Joseph an option to convert certain debt to equity.

109.    Appel, Nabeel and Joseph held themselves out as members of Floors & More and interfered with the development of customers of this new business.

110.    Appel, Nabeel and Joseph's failures to do the things they promised to do has cost Floors & More customers, has caused it to lose profits, and has interfered with its ability to retain contracts with third parties who were promised that the business of Appel, Nabeel and Joseph would be run through Floors & More.

111.    Appel, Nabeel and Joseph caused third parties to cease dealing with Floors and More to the detriment of Floors & More.

112.    At the same time Appel, Nabeel and Joseph failed to live up to their promises to Floors & More, they had confidential information of Floors & More's business model, goals and plans for the development of business in the highly competitive flooring business and on information and belief used this confidential information to their advantage.

113.    Despite their commitments and obligations to Floors & More, Appel, Nabeel and Joseph dealt with Floors & More's competitors for their own personal benefit.

114.    Appel, Nabeel and Joseph did not live up to their commitments, nor did they ever provide a legitimate business reason for not living up to their commitments.

115.    Through their actions, Appel, Nabeel and Joseph intentionally caused harm to Floors & More, all for their personal benefit.

116.    The conduct set forth herein and other conduct of Appel, Nabeel and Joseph constitute one or more unfair and deceptive acts or practices declared unlawful by G.L. c. 93A §2.

117.    As a result of the unfair and/or deceptive acts or practices of Appel, Nabeel and Joseph, Floors & More has suffered damages.

WHEREFORE, Plaintiff, Floors & More, LLC requests judgment enter against Scott Appel, Nabeel Hamad and Joseph Hamad jointly and severally as follows:

1.    In the amount of the damages each has caused to Floors & More, LLC in an amount to be determined at trial plus interest;

2.    That Floors & More, LLC   be awarded double or treble damages against each defendant as provided under G.L. c. 93A;

3.    That Floors & More, LLC be awarded its reasonable attorney's fees and costs of this action; and,

4.    For such other relief as this Court deems proper.

### COUNT VII – VIOLATION OF MASSACHUSETTS TRADE SECRETS LAW
### (Scott Appel, Nabeel Hamad and Joseph Hamad)

118.    Plaintiffs repeat and incorporate by reference paragraph 1 through 117 as if fully set forth herein.

119.    The detailed Business Plan prepared by Virga on behalf of Floors & More constitutes a trade secret within the meaning of the Massachusetts Trade Secret law, G.L. c. 93, § 42. The contents of the Floors & More Business Plan was shared with Appel based on his representation that he, Nabeel and Joseph would participate in the Floors & More buying groups and would run their sales through these groups.  On information and belief the contents of the Business Plan were shared with Nabeel and Joseph.

120.    Virga shared confidential information with Appel, Nabeel and Joseph on the proprietary techniques, practices and ideas he developed over his years of experience in managing buying groups.

121.    Despite assurances to the contrary, Appel, Nabeel and Joseph and the flooring companies they operate continue to do business with and to participate in buying groups that compete with Floors & More.

122.    On information and belief Appel, Nabeel and Joseph have used and shared the information contained in the Floors & More Business Plan and the propriety information given to them by Virga with competitors of Floors & More.

123.    As a result of the conduct of Appel, Nabeel and Joseph, Floors & More has been damaged.

124.    Violation of the Trade Secrets Act warrants injunctive relief prohibiting Appel, Nabeel and Joseph and the companies they have an ownership interest in, including but not limited to Touch of Color Design Group, Inc. and Touch of Color Flooring, Inc., from participating in competing flooring buying groups.

WHEREFORE, Plaintiff, Floors & More, LLC requests that this Court enter judgment against Scott Appel, Nabeel Hamad and Joseph Hamad as follows:

1.    The conduct of Scott Appel, Nabeel Hamad and Joseph Hamad constitutes a violation of the Massachusetts Trade Secret Law;

2.    That Scott Appel, Nabeel Hamad, Joseph Hamad and their companies, including Touch of Color Design Group, Inc. and Touch of Color Flooring, Inc. are preliminarily enjoined from participating in competing buying groups as owners or members of such competing buying groups pursuant to G.L.c. 93 Section 42A.

3.      That Scott Appel, Nabeel Hamad, Joseph Hamad, Touch of Color Design Group, Inc. and Touch of Color Flooring, Inc. are permanently enjoined from participating in competing buying groups as owners or members of such competing buying groups pursuant to G.L.c. 93 Section 42A.

4.      That Floors & More, LLC be awarded its damages resulting from such violation in an amount to be determined at trial plus interest, and

5.      That Floors & More, LLC be awarded double its damages resulting from such violation pursuant to G.L.c. 93 Section 43, and

6.      That Floors & More, LLC be awarded its reasonable attorney's fees and costs.

WHEREFORE FLOORS & MORE, LLC AND VINCENT VIRGA DEMAND A TRIAL BY JURY OF ALL COUNTS TO WHICH THEY ARE ENTITLED A JURY TRIAL.

FLOORS & MORE, LLC AND VINCENT VIRGA


By    *John A. Mavricos*
  John A. Mavricos, BBO#325360
  Andrew P. DiCenzo, BBO#689291
  Christopher, Hays, Wojcik & Mavricos, LLP
  446 Main Street, 8th Floor
  Worcester, MA 01608
  Tel: 508-792-2800
  jmavricos@chwmlaw.com
  adicenzo@chwmlaw.com

t:\pleadings\virgv101\virga101 - complaint.docx